Morning, our first case for argument today. Council, please keep your mask on. Oh, sorry. You may take your mask off only when you're standing at the podium and arguing. Our first case for argument today is 2019-2137 Uniloc v. Google. Is it Mr. Cody? How do I say that? Coide. Coide. Please proceed. Thank you, Your Honor. I apologize for the mask earlier. Good morning. May it please the Court. I want to first start with the meaning of the negative limitation without requiring registration. The claim language is without requiring registration of a conference call server for establishing the voice communication by the potential members, plural. The language goes on to further define what amounts to kind of essentially a parenthetical of potential members, including first party and at least one other party. The claim precludes requiring parties that register the conference call server, and this includes all potential members. Even if you buy into Google's Venn diagram analogy, their Venn diagram repeatedly shows three elements. They show registration with a conference call server and by potential members. But Google can't show a Venn diagram, and they don't, of the first party and at least one other party. That's because further clarification of potential members does not move up the first party and the other party to the level of potential members. Can I ask you this question, and please tell me if you can't hear me. I can hear you. Okay. First of all, do you agree that the by goes with registration? That it's registration by potential members, or do you think by goes with communication? Let me consider that, Your Honor. I think I had understood everybody was on the same page, that the by goes with registration. Yes, it goes by with registration. Okay, another question. Claim one is not here, but it was the principal focus of the board's decision. Claim one puts the definite article, the, in front of potential members. The other independent claims do not. I have not seen anybody make anything of that difference. Did you make anything of it? I have not considered it, Your Honor. Let me think about it. I don't think it makes a difference. I can't think of a difference here. Can I, good morning. Good morning. Just, this all seems very hard and very confusing to me, and it's Judge Toronto's questions. We're all playing with these words here, one individual word. Am I correct that your reading of this clause would be the same, even if the including language and everything that follows that, I mean, you mentioned it was a parenthetical. Would your reading be any different if that clause were not in the phrase, or if that phrase were not in the clause? Well, there might be some impact to kind of link up the potential members to the first member and the second member, but I think the answer to your question, Your Honor, is no, it would not be any different. We read it as. So isn't that kind of a contrary to principles that we're supposed to give words some meaning? And there's not even, I mean, you mentioned it was parenthetical. There's no parentheses in this claim, and there's not even a comma preceding the word including. So I'm having trouble accepting what you're trying to have us accept. I understand, Your Honor. Certainly, you know, we often, you as jurists and we as litigants often deal with the nature of claims where they're like one entire run-on sentence. I think fairly read, it is a parenthetical. We note the example of the toy that is not a cube with primary colors including red, yellow, and blue. That would be very similar here in that just as primary colors, the potential members is a collective term for a group that is already defined. Isn't this just too hard? I mean, you're the drafter here. You have to show, do you not, in the circumstances we find ourselves today that their construction is unreasonable or the board's construction is unreasonable, right? Just to back up, Your Honor, I do agree this is a very – to me, this is very hard because we're dealing with a negative limitation, so my brain has to kind of switch modes. Well, it's harder than many negative limitations. Yes. Yes, Your Honor. But again, the potential members is the thing that's defined. Again, the fair reading of I read it as then it's just saying, okay, the potential members – here's what the potential members are. It's not saying that and, and including merely kind of makes everything rise up to the level of the things that are included, the three things in their Venn diagram. So including doesn't mean included? It does for just to define what the potential members are, but it's not kind of directed to the negative limitation. And what grammatically leads us to the conclusion? I just think the context, Your Honor, that it refers to members, plural. So under the board's construction, they find it sufficient that only, you know, only one of – if they could find one member that is only registered. I mean, we know that in the Liversidge reference, there's always registration, at least by the team member initiating the call. So if you just had a two-way call with that person, the person initiating the call, and some other person, the members would not be registered. So it's the nature of the plural, which I think is important here, that the court's – the board's application of this just doesn't – it conflicts with the plain language of the claim. And my second part of my question, just to conclude, is that the standard here would be that you would have to show the board's construction as unreasonable. That's right, Your Honor. But if it conflicts – as I just noted, it conflicts with the plain language of the claim that members plural – potential members plural, that wouldn't be a reasonable construction. You do agree that the board's and Google's construction is, in fact, the broader of the two because it keeps more stuff under the coverage of the claim. Yes. Yeah, Your Honor. Yeah, that's correct because it's a negative limitation. I know. That was that mirror negative limitation. I know. I have to think everything twice in these cases. Unfortunately, both of them deal with negative limitations. Well, let me move on to the prosecution history disclaimer. On that one, Google's primary argument is that the extent there was any prosecution or disclaimer that might have occurred, it was undone by a subsequent amendment that would have occurred prior before registration. And as we noted, that amendment was made in response to a 112 indefiniteness rejection. Applicant did not rescind the earlier disclaimer, and the examiner did not renew the Hamburg rejection after the prior was removed. And there's no indication that either the examiner or the applicant saw a need to revisit it. One case, which just for the court's full disclosure, is not cited in our brief, which is similar to this, is Hakeem v. Cannon-Avent. That's 479, Fed Third, 1313. The pinpoint site is 1317-18. And in that case, the court noted that an applicant cannot recapture claims scope that was surrendered or disclaimed, and then it notes a narrow exception. It says disclaimer made during prosecution can be rescinded, permitting recapture of the disclaim scope. When the prosecution must be sufficiently clear to inform the examiner that the previous disclaimer and the prior that was made to avoid may be revisited. I'm sorry. How is it clear in this case, counsel, when it used to say prior registration and the word prior was removed, so how is it clear that the disclaimer is now the broad disclaimer you're seeking as opposed to simply a disclaimer of prior registration? Sure. I understand, Judge Moore. I think our point is we didn't say the prosecution didn't say, okay, well, here's what this one term means or here's what it imports. We said this is what our invention is. Our invention is not this. And so we're burdened with those comments and those arguments. We can't take it back unless there's something in the record saying, okay, we're undoing that. And there's nothing saying we undo those comments. I mean, if this is a reverse situation and we were – Why don't you tell me exactly what prosecution language you think says our invention is this such that we ought to treat it as a disclaimer because I understand the circumstances of this prosecution exchange to be all based on prior registration and Hamburg. I don't understand it to be defining the scope of the invention generally. So you show me where in the prosecution history exactly you think this disclaimer language is the strongest for you. Okay, Your Honor. I understand. It is true, Your Honor, that the Hamburg rejection did refer to language – arguments referred to prior. We also have the alternative argument for the alternative embodiment. No, I asked you to show – you said you – in the prosecution you said our invention is this and that we're bound by it. So show me where in the prosecution history you did that, what you just stood here and said you did. Show me where you did that. Sure. What I was – I'm trying to be responsive to you, Your Honor. All I'm saying is I was going to – there were two bases for prosecution disclaimer, the Hamburg and also the alternative embodiment. And so then the examiner there – and this is noted in our blue brief at pages 33 to 34. They noted the alternative – Where in the prosecution history? You see, this is the appendix. Yes, I'm – sorry, Your Honor. Show me where in the prosecution history I can see what you're suggesting. Okay. I understand. Hang on a second. I'm betting you're going to take me to 1059. I'll try to help you out. But I could be wrong. Just give me a second. I'm sorry. I'll look at 1059 if you – No, I was going to direct Your Honors to – Yeah, I'm sorry, 1059. This is where it was described in our brief in – it does refer to 1059. The applicant expressly disclaimed that is referred to the alternative and hence disclaimed embodiment described in paragraph – I'm sorry. Where are you on 1059? I'm sorry. Hang on a second. In the middle of the first – The middle of the one – the paragraph that starts with the examiner. Okay. And so they're talking about here alternative embodiment is described. They might have described it with respect to paragraph. Do not require the prior registration from the conference server. Indeed, the conference server may simply strip telephone numbers from the conference message. So they're disclaiming this embodiment. You're disclaiming registration or prior registration? I think both, Your Honor. But it's definitely – I mean, they're noting the fact that it is prior registration, but it's a registration that does occur previously. But in any way, just to get back to what I was arguing, sorry, there's no indication that the applicant wanted to retract that earlier disclosure. The examiner didn't need to revisit it. And so under that Hakeem v. Kennedy event group case, we think that the prosecution disclaimer should still apply. Do you want to save the rest of your time? I will, Your Honor. Yes. Okay. Thank you. Ms. Arner, please be seated. Counsel, please put your mask back on. Yes, Your Honor. If I have to tell you again, you're not going to take it off again the rest of the time, are you? Okay. Thank you. May it please the Court. Claim limitation requires three things, and I find it simplest to think about it as if it were a positive limitation. And if it were a positive limitation, it would require the combination of registration with a conference call server by the parties listed in the claims. If it's not a positive recitation, it's a negative one. So if it were positive to be within the scope of the claims, you would have to be in the combination of all three things. Since it's a negative limitation to be within the scope of the claims, you can be anywhere except in the combination of those three things. Uniloc's arguments on appeal are all attempts to add things to that carve-out, the one thing that is excluded from the scope of the claims. They do that based on the timing of the registration or the type of registration or the parties who can be required to register or not. But the simplest path to resolve the case is the one the Board chose, which is focusing on the third requirement, the width of conference call server. The Board mapped the conference call server in the claims to call server 50 in Liversidge, and no one has ever argued that anyone registers with call server 50. With no conference call server registration, you cannot be in that carve-out that requires all three things. And so the Board found that registration is fine, prior registration, registration by looking something up in a table, whether it's one member or all the members, it doesn't matter, as long as it's not with a conference call server. Do I remember right that in your petition, you've never said, in Liversidge, the conference call server is the call server, nobody registers with it, QED. You have one sentence that says something, I think there's several ping-pongs in the sentence, but it was only about the DTE server, which you didn't quite say was not the conference call server, but in any event, you didn't say that the call server was. You remember correctly, and the Board posed that exact question, and they relied on this court's Itemetsu case, which said this is how an IPR works. And the patent owner was actually, the petition really talked about the collaboration services suite, which is the whole system. That's really the language the petition used most, but you're right, it never said that one sentence about the conference call server being call server 50. The argument was raised in the patent owner response, and the petitioner responded as they are allowed to do under Itemetsu and the statute itself, to respond in the reply. And in the reply, they did so and said, no, no, we didn't mean the DTE server, we mean the conference call server. And the Board found that that was not too late, and they relied on it. I'm sorry, conference call server is not a term in Liversidge. No, that's right, it's call server 50 in Liversidge. That's right. And the Board noted the different servers in the institution decision. They noted that there's a presence server, a VTE server, and a call server. And then in the reply, the petitioner explained that the VTE server is not the call server. But even if it is the call server, Liversidge still is not within that carve out because Liversidge allows non-team members to join the IM session, which is then converted automatically without a separate registration step into the voice call. And so the Board found the clearest and easiest path, which is to take out. Can I summarize for a second to make sure I understand this right? Yes, please. The Board found Liversidge discloses that without registration limitation, even if the VTE server is read as the claimed conference call server, and you release your firm on that basis, the Board alternatively found the call server 50 could be the conference call server and that that would likewise not affect registration. And what we were talking about first is whether there's a SAS or an APA problem with that alternative finding because you didn't allege that in the petition. You never pointed to call center, call server 50, and said that is the conference call server. Is that right? Right, because what we said is registration is never required with any server in Liversidge because non-team members are allowed. And then when they picked a specific part of it, the VTE server, we responded that no, that's not it because the call server is what initiates the conference call. And the Board reasonably found that same mapping. It even looked at a prior IPR that Unilog did not appeal. But stop for a second. I just want to make sure I understand. So if I were to conclude that it was improper under SAS in light of the APA for the Board to make this alternative finding about call server 50 because that was not ever identified in your petition as corresponding, you still think we should affirm under a substantial evidence standard because what was identified was the VTE server and you think the Board was correct in concluding that doesn't do the registration? Yes, that's right. Okay, I just want to make sure I understand. Thank you for the clarification, Chief Judge Moore. But that background is what puts you into the negative limitation suit. Which is fine. I mean, we can talk about the VTE server and the reasons that if we take away the conference call server and say that the call server 50 and we say that the conference call server is VTE server in Liversidge, we are still not in that carve out for several reasons. I think the simplest one is that Liversidge never requires registration. They allow non-team members into the call. And they say in paragraph 82 and paragraph 125, 135, they talk about inviting a non-team member into the call. Even if they don't have a VTE client installed in their computer, you can invite them in just by looking up their phone number. As I understand Unilock's position, Unilock does not dispute that if not all of the potential members have to register, then they lose. That piece of their argument, I think, is dependent on their claim case documents. Yeah, so I think that's right. Thank you. And regardless of which parties or how you resolve that potential members issue, Liversidge is still within the scope of the claims and not in the carve out for the additional reason that what they point to as registration, so we're not in the potential members circle, we're in the registration circle. What they point to is joining a team as the registration supposedly in Liversidge. And that is done, as the board noted, with presence server, not VTE server. And that's in figure 14. It shows the process of joining a team, creating a team, and the presence server, it's on the right-hand side of figure 14, is the thing that actually creates the team. And it notifies VTE when the registration is complete. That's right, and it also maintains status table 43, which is where the team information is looked up. All of that is done by the presence server, so even if VTE server is the conference call server, there's not registration with it because the registration in Liversidge is with the presence server. In fact, it even notified VTE registration is complete. So it's kind of hard to imagine VTE is affecting registration when it's been notified registration is complete. That's right. There's another reason also. The third reason would be the board's construction requires that members not need a separate registration with the conference call server, something at the time of or around the conversion. And so what Unilock points to there is the convert session, that while an IM session is going on, one of the current participants of the IM session, as the claim says, can push or select the convert session function, which causes the conversion from the IM session into the conference call. And the way that happens is the VTE server translates that convert session request, that's all in figure 32, and it looks up the right dial-in information for each of the members and then sends it along to the call server to establish the call. So that's all happening behind the scenes. It's not requiring anything additional or separate, which is what the board said is the right construction of the right way to read the without requiring. So those are three separate reasons why, even if the VTE server is the conference call server, Liversidge is still not in that carve-out. Happy to answer any other questions. Thank you, Sarna. Let's have some rebuttal time. Koide, did I say it right? Yes. Thank you. With my time, I just want to briefly address the conference call server, which I didn't get to address in the opening. In response to Mr. Arnor's comments, Claims 6, 11, and 16 each recite that the conference call server is for establishing voice communications. Independent, as Judge Toronto noted, and in the petition at 1113, they stated VTE server initiates the conference call between the users A, B, C, without additional involvement of the first user. So our point broadly, Your Honors, is that their kind of statement that it initiates is linking up the establishing the voice communications. And the board never explained why the VTE server should not be included. Can I redirect you? That's something you said in your opening argument,  You made a point to the effect that the claim construction of the negative limitation that the board adopted and that Google presses creates something that I think you described as sort of not very sensible in practice, that it would exclude too little or something. This is not ringing a bell? No, I'm sorry. Then you're not going to be able to elaborate. I'm sure I did say that. I might have either misspoke or I don't understand. Okay. Sorry. The only thing I want to say before we run out of time is the 149 patent in the conference call server, which is described in the abundance of 149 patent, it has communication with both packet-based and voice. It's at appendix 73, column 6, lines 22 to 29. It also notes that the instances that are grouped at 7, that the conference call server can be implemented in a distributed way. I think the error the board made, kind of in a nutshell, is they looked at Liberstage and they saw conference server. They saw the similarity. In a server, you have to look at the functionality of something, not merely what something's called around the box. So they didn't include the BTE server, I think, was their primary error. That's all I have, Your Honor. Other than that, we're still in reverse. Okay. Thank you, counsel.